<u>NOT FOR PUBLICATION</u>                    [Doc. No. 21]

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | |
|---|---|
| WILLIAM FENNIMORE, | Civil No. 09-2090 (RMB/KMW) |
| Plaintiff, | |
| v. | |
| LOWER TOWNSHIP, DOUGLAS WHITTEN, MICHAEL IAMES, MICHAEL SZEMCSAK, OFFICER MICHAEL KENNEDY, AND JOHN DOES 1-3, | **OPINION** |
| Defendants. | |

Appearances:

     Brian M. Puricelli
     Kravitz & Puricelli, Esqs.
     691 Washington Crossing Road
     Newtown, PA 18940
         Attorneys for Plaintiff

     James R. Birchmeier
     Powell, Birchmeier & Powell, Esqs.
     1891 State Highway 50
     P.O. Box 582
     Tuckahoe, NJ 08250-0582
         Attorneys for Defendant

**BUMB**, United States District Judge:

Defendant Officers Douglas Whitten, Michael Iames, Michael Szemcsak, and Michael Kennedy and Lower Township (collectively "Defendants") move for summary judgment dismissing the Complaint filed by William Fennimore ("Plaintiff"). Plaintiff has failed

to file any opposition to the motion.  For the following reasons,
Defendants' motion is granted.[1]

## I.    Statement of the Facts[2]

---

[1]The same day that this Court was preparing to file its
Opinion, it received a letter from Defendants' counsel [Docket
No. 22] alluding to the Court's delay in deciding this unopposed
motion.  The fact that this summary judgment motion went
unopposed perhaps led counsel to believe that the Court could
grant the motion as a matter of course.  Not so.  Plaintiff's
"failure to respond to Defendants' motion 'is not alone a
sufficient basis for the entry of a summary judgment.'"  Hooks v.
Schultz, Civ. No. 07-5627, 2010 WL 415316, at *3 (D.N.J. Jan. 29,
2010) (quoting Anchorage Assocs. v. Virgin Islands Bd. of Tax
Review, 922 F.2d 168, 175 (3d Cir. 1990)).  "The Court must still
determine, even for an unopposed summary judgment motion, whether
the motion for summary judgment has been properly made and
supported and whether granting summary judgment is
'appropriate,'...."  Id.  See also Fed.R.Civ.P. 56 advisory
committee's note to 2010 amendment ("...summary judgment cannot
be granted by default even if there is a complete failure to
respond to the motion....").  In other words, it is by no means
an effortless endeavor:  the Court must thoroughly address all
claims raised in a complaint and ensure that summary judgment is
appropriate given the record, albeit undisputed.  For this
reason, this Court's lengthy Opinion follows.

[2]Pursuant to Civil Rule 56(e),

If a party fails to properly support an assertion of fact or
fails to properly address another party's assertion of fact
as required by Rule 56(c), the court may:

(1) give an opportunity to properly support or address the
fact;

(2) consider the fact undisputed for purposes of the motion;

(3) grant summary judgment if the motion and supporting
materials--including the facts considered undisputed--show
that the movant is entitled to it; or

(4) issue any other appropriate order.

Local Rule 56.1 further mandates:

The opponent of summary judgment shall furnish...a
responsive statement of material facts...stating each

### A.   Altercation Reported on Orchard Drive

On or around midnight on June 15, 2007, Plaintiff's son, Edward, arrived at his home on Orchard Drive with two friends. (Defendant's Statement of Undisputed Facts ("SOF") ¶ 2.)  Upon arrival, Edward's sister told him that there had been an argument earlier that night.  <u>Id.</u>  Some time thereafter, Edward saw his mother, Plaintiff's wife (hereafter "Mrs. Fennimore"), exit the home.  (<u>Id.</u> at ¶ 3.)  Edward heard a door slam and saw Plaintiff run after Mrs. Fennimore and grab her by the arm.  Believing that Plaintiff would hit his mother, Edward intervened. (<u>Id.</u> at ¶ 4-5.)  Edward grabbed his father, the Plaintiff, laid him on the ground and held him until police arrived.  (<u>Id.</u> at ¶ 4.)

### B.   Defendant Officers Arrive On-Scene

#### 1.   Officer Iames

Defendant Officer Michael Iames was the first officer to arrive on the scene.  (<u>Id.</u> at ¶ 82.)  Upon seeing several people in the roadway, he called for backup.  (<u>Id.</u> at ¶¶ 82, 87.) Officer Iames did not describe seeing Plaintiff restrained by Edward.  Rather, Edward "ran up to" Iames and reported that Plaintiff "was fighting him."  (<u>Id.</u> at ¶ 82.)  Plaintiff also

---

material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion; any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion.

As noted, Plaintiff failed to respond to Defendants' summary judgment motion, and thus fails to offer any counter statement of facts.  Thus, the Court deems Defendants' version of material facts as undisputed for purposes of this motion.

approached but reported that he had been attacked by Edward.
(<u>Id.</u>)  When Officer Iames asked both parties to remain calm,
Plaintiff ran inside his residence.  (<u>Id.</u>)

Officer Iames believed that Plaintiff had assaulted Edward,
who complained of leg pain and had difficulty breathing.  (<u>Id.</u> ¶
at ¶¶ 82-84.)  Edward further reported that he did not know if
Plaintiff had weapons in the home but thought that Plaintiff
hunted.  (<u>Id.</u> at ¶ 83.)  Officer Iames remained with Edward and
waited for backup.  (<u>Id.</u> at ¶¶ 87-88.)

### 2.  Officer Whitten

Defendant Officer Douglas Whitten arrived next on scene and
observed Officer Iames standing in the street with three white
males.  (<u>Id.</u> at ¶ 8.)  Officer Whitten recognized Edward, who
spoke to Officer Iames "in an animated fashion."  (<u>Id.</u> at ¶¶ 9-
10.)  Iames informed Whitten that Plaintiff was intoxicated
inside the residence and that there had been an altercation
between Plaintiff and his wife.  (<u>Id.</u> at ¶ 11.)  Either Officer
Iames or Edward informed Officer Whitten that Mrs. Fennimore had
fled the scene.  (<u>Id.</u> at ¶¶ 12-13.)  Edward reported being struck
by a metal pole, which Whitten observed lying in the yard.[3]  (<u>Id.</u>

---

[3]Medical records indicate that Edward had been punched in
the chest, had a contusion on his forearm and a human bite mark.
Def. Ex. L.  The Court notes that in his statement to Police,
Edward <u>denied</u> that Plaintiff hit or bit him.  Edward did
indicate, however, that he had a physical encounter with
Plaintiff:

Q.  Okay, do you ever remember him hitting you?

A.  No, he...he did not hit me.

at ¶ 17.)  Officer Whitten also noted that Edward's shirt was torn and that his arm was injured.  (<u>Id.</u>)  Edward told Officer Whitten that Plaintiff kept shot guns in his attic.  (<u>Id.</u> at ¶ 16.)

### 3.   Officer Szemcsak

Defendant Officer Michael Szemcsak arrived on scene after Officers Iames and Whitten and noted several people out of their houses.  (<u>Id.</u> at ¶¶ 43-45.)  Officer Szemcsak observed that Edward was upset and crying.  (<u>Id.</u> at ¶¶ 44-45.)  As Officer Szemcsak approached the home, Edward started to convulse and seize.  (<u>Id.</u> at ¶ 46.)  Based on his observation of Edward's condition, Officer Szemcsak believed Edward to be the victim of an aggravated assault.  (<u>Id.</u> at ¶ 50.)

### 4.   Officer Kennedy

---

...

A.  I remember him coming back out of the house when he went home.  I went to move my quad and my buddie's [sic] quad, we were going to take them back to my buddie's [sic] house because of all this happening and he came outside and he got caught onto the tiki torch thing and he picked up...just threw it.  Now, he did not throw it at me.  Now they were asking a bunch of questions when I was laying on the ground because I...my whole left side went numb.

...

I could not feel my left arm.  And that was, I guess from rolling on the ground from this mark here, cause you can see the scrapes and stuff, so...

But, he did not hit me, not swing at me.  They say they have something here, some metal thing that he got caught on I guess....

Def. Ex. B.

Defendant Officer Michael Kennedy arrived on scene some time after Officers Iames and Whitten.  (Id. at ¶¶ 63-64.)  Officer Kennedy observed Edward yelling and "hyperventilating."  (Id. at ¶ 64.)  He saw one Officer talking to Edward and another Officer at the front door of the residence.  (Id. at ¶ 67.)

**C.   Plaintiff's Arrest**

At some point, Sergeant Adams, who is not a named defendant, arrived on scene.  (Id. at ¶ 66.)  Officer Kennedy knew Plaintiff's older son and informed Sergeant Adams that Plaintiff was an avid hunter.  (Id. at ¶ 70.)  Adams told Officer Iames to search for Plaintiff's wife[4] and sent Officer Kennedy to the back of Plaintiff's residence.  (Id. at ¶¶ 30, 20, 66, 88.)  Sergeant Adams remained at the front, right side of the house.  (Id. at ¶ 71.)

Officer Whitten, who believed that Plaintiff's wife could be in the residence with Plaintiff, began knocking on Plaintiff's front door.  (Id. at ¶¶ 19, 22-25.)  Whitten heard banging and loud, crashing noises coming from inside the home.  (Id.)  The Officers heard Plaintiff yelling and cursing, telling the Officers to leave the property.  (Id. at ¶¶ 23-24, 48-49, 68.)  Officer Whitten asked Plaintiff to answer the door.  (Id. at ¶ 26.)  Plaintiff did open the door briefly and cursed at Whitten.

---

[4]Officer Iames found Mrs. Fennimore standing behind a Shell gas station, approximately two blocks from Plaintiff's residence.  (Id. at ¶ 89.)  She had an abrasion over one eye and told Officer Iames that she did not want to go home.  (Id. at ¶ 91.)  Sergeant Adams instructed Iames to bring Plaintiff's wife back to the residence.  (Id. at ¶¶ 93-94.)

(<u>Id.</u> at ¶¶ 27-28.)  Officer Szemcsak saw Plaintiff slam the door so hard that the force caused a light fixture to fall.  (<u>Id.</u> at ¶ 49.)  Officer Whitten continued to knock louder.  (<u>Id.</u> at ¶ 28.)

Plaintiff ran to the back of the home, opened the back door and yelled at Officer Kennedy to get off his lawn before slamming the back door shut.  (<u>Id.</u> at ¶ 72.)  Officer Whitten heard Plaintiff yell and curse at Officer Kennedy from the front of the home.  (<u>Id.</u> at ¶ 31.)  Whitten continued to knock loudly, causing Plaintiff to open the door twice.  (<u>Id.</u> at ¶ 32.)

### 1.  Officer Whitten's Account of the Arrest

Plaintiff eventually stuck his head through a screen to the side of the front door.  (<u>Id.</u> at ¶ 32.)  At this point, Officer Whitten sprayed Plaintiff with pepper spray for approximately three seconds from approximately six feet away.  (<u>Id.</u> at ¶ 112.) Officer Whitten then kicked in Plaintiff's front door.  (<u>Id.</u> at ¶ 34.)  Plaintiff and Officer Whitten were alone in the home for approximately ten seconds.  (<u>Id.</u> at ¶ 34.)  Plaintiff, who wore pants but no shirt, screamed and charged at Officer Whitten. (<u>Id.</u> at ¶¶ 35-36.)  Officer Whitten responded by kicking Plaintiff in the chest.  (<u>Id.</u> at ¶ 36.)  Both Plaintiff and Officer Whitten landed on top of a coffee table, which broke under the men's weight.  (<u>Id.</u>)  Officer Whitten continued to struggle with Plaintiff and eventually secured one of Plaintiff's arms behind his back.  (<u>Id.</u> at ¶¶ 37-39.)  The other Officers assisted in restraining Plaintiff's other arm.  (<u>Id.</u> at ¶ 37.)

7

Officer Whitten heard Officer Iames report that he had located Mrs. Fennimore only after he had kicked in Plaintiff's front door. (Id. at ¶ 20.)

### 2. Officer Szemcsak's Account of the Arrest

Officer Szemcsak stood at the front of the house and observed the interaction between Officer Whitten and Plaintiff. (Id. at ¶¶ 47-49; 52-54.)  Szemcsak witnessed Plaintiff stick his head through a screen and watched Officer Whitten administer a quick burst of pepper spray. (Id. at ¶¶ 53-54.)  Officer Szemcsak also saw Plaintiff charge Officer Whitten after he kicked in the door. (Id. at ¶ 55.)  Szemcsak entered the home and saw Plaintiff fall backward and push off a couch. (Id. at ¶¶ 55, 59, 62.)  Plaintiff then pushed Officer Whitten and fell or jumped on Officer Szemcsak, causing the two men to fall onto the coffee table. (Id. at ¶¶ 55-56.)  Plaintiff was on top of Officer Szemcsak. (Id. at ¶ 56.)  Both men rolled to the side. (Id. at ¶ 57.)  Officer Szemcsak tried to keep his distance to prevent Plaintiff from reaching Officer Szemcsak's weapon. (Id.)  Officers Szemcsak and Whitten tried to secure Plaintiff's arms, but Plaintiff continued to struggle. (Id. at ¶ 58.)  Eventually, Officer Szemcsak managed to roll Plaintiff so he was face down. (Id. )

### 3. Officer Kennedy's Account of the Arrest

Officer Kennedy walked to the front of the home. (Id. at ¶¶ 73-74.)  From the doorway, Officer Kennedy saw Officers Whitten

and Szemcsak struggle to handcuff Plaintiff. (Id. at ¶ 75.)
Plaintiff continued to kick at the Officers as the Officers
grabbed Plaintiff's arm. (Id. at ¶¶ 75-76.)  Officer Kennedy
pulled out his handcuffs and either he or the other Officers
placed the handcuffs on Plaintiff. (Id. at ¶¶ 73, 76-77.)

    **D.   Transport to Police Station**

    The Officers assisted in transporting Plaintiff to Officer
Whitten's patrol car. (Id. at ¶¶ 40, 78)  Plaintiff continued to
kick, flail and curse as Officer Whitten drove Plaintiff to the
station. (Id. at ¶ 41.)

    **E.   Charges Dismissed**

    At the station, Lower Township Rescue treated Plaintiff for
injuries. (Id. at ¶ 114.)  Plaintiff was charged with two counts
of aggravated assault with a deadly weapon and with obstructing a
domestic violence investigation. (Id. at ¶¶ 114, 116.)  The
charges were downgraded and later dismissed. (Id. at ¶¶ 117-18;
Pl. Compl. ¶¶ 28-29.)  Defendants' Statement of Facts indicates
that the charges were dismissed by the Cape May County
Prosecutor's Office when Edward refused to testify. (Def. SOF at
¶¶ 117-18).  Plaintiff's Complaint indicates that the charges
were dismissed by a Lower Township municipal court judge. (Pl.
Compl. ¶ 28-29.)

    **F.   Plaintiff's Complaint**

On May 4, 2009, Plaintiff filed a three-count Complaint, alleging state and federal claims.  Defendants now move for summary judgment.  Plaintiff filed no response to the motion.

## II. Standard

Summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  "An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law."  Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

"If the non-moving party bears the burden of persuasion at trial, 'the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry that burden.'"  Id. (quoting Wetzel v. Tucker, 139 F.3d 380, 383 n. 2 (3d Cir. 1998)).  Upon such a showing, the burden shifts to the non-moving party to produce evidence of a genuine, factual dispute.  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The non-movant's burden is rigorous:  it "must point to concrete evidence in the record"; mere allegations, conclusions, conjecture and speculation will not defeat summary judgment. Orsatti v. N.J. State Police, 71 F.3d 480, 484 (3d Cir. 1995).

10

When considering a summary judgment motion, the Court does not weigh evidence; rather, all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party." <u>Meyer v. Riegel Products Corp.</u>, 720 F.2d 303, 307 n. 2 (3d Cir. 1983).  However, a mere "scintilla of evidence," without more, will not give rise to a genuine issue for trial.  <u>Anderson</u>, 477 U.S. at 252.  Summary judgment is appropriate "where the record ... could not lead a rational trier of fact to find for the nonmoving party...." <u>Matsushita Elec. Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).  "Summary judgment motions thus require judges to 'assess how one-sided evidence is, or what a "fair-minded" jury could "reasonably" decide,'...." <u>Williams v. Borough of West Chester, Pa.</u>, 891 F.2d 458, 460 (3d Cir. 1989) (quoting <u>Anderson</u>, 477 U.S. at 265 (Brennan, J., dissenting)).

## III.  Analysis

Defendants seek summary judgment dismissing Plaintiff's federal and state claims.

### A.   Section 1983 Claims

Plaintiff appears to state several claims pursuant to 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State...subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the

deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Id. Therefore, to state a claim under this Section, a plaintiff must establish two elements:  (1) "the violation of a right secured by the Constitution and laws of the United States" and (2) "that the alleged deprivation was committed by a person acting under color of state law."  West v. Atkins, 487 U.S. 42, 48 (1988).

### 1.  Count One

Plaintiff alleges violations of the Fourth and Fourteenth Amendments in Count One of his Complaint.[5]  The Court begins by noting that although Plaintiff alleges in paragraphs eight, nine and ten of his Complaint that all the Defendant Officers used "unreasonable force" and caused an "unreasonable seizure," Plaintiff identifies only three officers in Count One by name:

---

[5]In paragraph thirty-five of his Complaint, Plaintiff alleges that he was deprived of rights guaranteed him by the Ninth Amendment.  However, the Ninth Amendment "is not a source of substantive rights." Lohman v. Township of Oxford, Civ. A. No. 91-7037, 1992 WL 95914, at *4 (E.D. Pa. 1992) (citing Gibson v. Matthews, 926 F.2d 532, 537 (6th Cir 1991); see also Nicolette v. Caruso, 315 F.Supp.2d 710, 718 (W.D. Pa. 2003) (citing Metz v. McKinley, 583 F.Supp. 683 (D.C. Ga. 1984), aff'd, 747 F.2d 709 (11th Cir. 1984)) ("As such, the Ninth Amendment standing alone does not confer substantive rights for purposes of pursuing a constitutional claim.).  Thus, any claim arising under the Ninth Amendment fails as a matter of law.

Officer Whitten, Iames and "John Doe."  Thus, no facts are pled,
let alone established, to support claims against Officers
Szemcsak and Kennedy.  Plaintiff's failure to plead any facts
supporting constitutional claims against these Officers is surely
due to the fact that, as the record demonstrates, none exist.
Moreover, for the reasons set forth below, the Court finds that
the Defendant Officers are qualifiedly immune from Plaintiff's §
1983 claims and that summary judgment must be awarded in
Defendants' favor.

Courts recognize that police officers "performing
discretionary functions are immune 'from liability for civil
damages insofar as their conduct does not violate clearly
established statutory or constitutional rights of which a
reasonable person would have known.'"  Lamont ex rel. Estate of
Quick v. New Jersey, --- F.3d ---, 2011 WL 753856, at *4 (3d Cir.
Mar. 4, 2011) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818
(1982)).  "To determine whether an officer is qualifiedly immune
from suit," courts ask two questions: "(1) whether the officer
violated a constitutional right, and (2) whether the right was
clearly established, such that "it would [have been] clear to a
reasonable officer that his conduct was unlawful in the situation
he confronted."  Id. (quoting Saucier v. Katz, 533 U.S. 194,
201-02 (2001)).  As for this second question, the Court's inquiry

is whether the right at issue was clearly established in a particularized sense, such that "a reasonable official would [have understood] that what he [wa]s doing violate[d] that right." Id. (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

Although the Court has discretion as to which issue to address first, Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808, 818 (2009), the Court begins by determining whether the Defendant Officers violated Plaintiff's constitutional rights. "The primary step in assessing the constitutionality of the officers' alleged actions is to determine the relevant facts." Giles v. Kearney, 571 F.3d 318, 326 (3d Cir. 2009)(citing Scott v. Harris, 550 U.S. 372, 378 (2007)). In conducting its qualified immunity analysis, the Court "[is] required to view the facts in the light most favorable to the plaintiff." Id. (citing Saucier v. Katz, 533 U.S. 194, 201 (2001); Scott, 550 U.S. at 378). Said differently, "the court must determine if the facts alleged, taken in the light most favorable to the injured party, show a constitutional violation." Halpin v. City of Camden, 310 Fed. Appx. 532, 533-34 (2009) (citing Saucier, 533 U.S. at 201).

The Court understands Plaintiff to assert three, separate claims in Count One: excessive force, false arrest and malicious

14

prosecution.[6]   Qualified immunity shields the Defendant Officers

---

[6]The Court notes that, "[a]s in any action under § 1983, the
first step is to identify the exact contours of the underlying
right said to have been violated." County of Sacramento v.
Lewis, 523 U.S. 833, 842 n. 5 (1998).  Count One of Plaintiff's
Complaint, however, fails to identify the contours of the
underlying rights said violated.  As such, this Court has had to
make several presumptions.  It has done so without any assistance
from Plaintiff.

Fairly read, Count One appears to allege claims for false
arrest, excessive force and malicious prosecution in violation of
the Fourth Amendment and applied to the states via the Fourteenth
Amendment. See Maryland v. Pringle, 540 U.S. 366, 369 (2003).
Claims for unlawful arrest, false imprisonment and malicious
prosecution are, of course, cognizable under the Fourth
Amendment.  See Reedy v. Evanson, 615 F.3d 197, 211 (3d Cir.
2010) (quoting Orsatti v. N.J. State Police, 71 F.3d 480, 482 (3d
Cir. 1995))("It is well-established that the Fourth Amendment
'prohibits a police officer from arresting a citizen except upon
probable cause.'"); Groman v. Twp. of Manalapan, 47 F.3d 628, 636
(3d Cir. 1995) ("A false imprisonment claim under § 1983 which is
based on an arrest made without probable cause is grounded in the
Fourth Amendment's guarantee against unreasonable seizures.");
Gallo v. City of Philadelphia, 161 F.3d 217, 222 (3d Cir. 1998)
(holding that a malicious prosecution claim is grounded in the
Fourth Amendment concept of "seizure").

To the extent Plaintiff attempts to allege claims for
violation of equal protection and substantive due process, by
merely stating these legal terms, the Court finds such claims
fail as a matter of law.  See Compl. ¶ 31 ("As a direct and
proximate result of the Defendants' actions...the Plaintiff was
deprived of...equal protection of the law [and] substantive due
process....")  Plaintiff offers no facts by which a reasonable
fact finder could infer that Plaintiff received different
treatment from any other similarly situated individual.  See,
e.g., Keenan v. City of Philadelphia, 983 F.2d 459, 465 (3d Cir.
1992).  Moreover, to the extent Plaintiff's substantive due
process claim arises from the Defendant Officers' alleged
misconduct, such claim is analyzed under the "more-specific
provision" of the Fourth Amendment.  See Graham v. Connor, 490
U.S. 386, 395 (1989) ("Because the Fourth Amendment provides an
explicit textual source of constitutional protection against this
sort of physically intrusive governmental conduct, that
Amendment, not the more generalized notion of 'substantive due
process,' must be the guide for analyzing these claims.).

from all three claims.

### a. Excessive Force

To prevail on his Fourth Amendment excessive-force claim, Plaintiff "must show that a seizure occurred and that it was unreasonable under the circumstances." Lamont, 2011 WL 753856, at *4 (citing Brower v. County of Inyo, 489 U.S. 593, 599 (1989); Graham v. Connor, 490 U.S. 386, 395-96 (1989)).  Factors to be considered include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396 (citing Tennessee v. Garner, 471 U.S. 1, 8-9 (1985)).  "Additional factors include 'the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time.'"  Rivas v. City of Passaic, 365 F.3d 181, 198 (3d Cir. 2004) (quoting Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997)).

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," Graham, 490 U.S. at 396, and usually presents a question for a jury.  Rivas, 365

16

F.3d at 198 (citing <u>Abraham v. Raso</u>, 183 F.3d 279, 290 (3d Cir. 1999)).  When assessing reasonableness, courts in the Third Circuit consider "all of the relevant facts and circumstances leading up to the time that the officers allegedly used excessive force."  <u>Id.</u> (citing <u>Abraham</u>, 183 F.3d at 291).

The undisputed facts here demonstrate the objective reasonableness of the force employed against Plaintiff.  Officer Whitten's actions of spraying Plaintiff with pepper spray for approximately three seconds from approximately six feet away, kicking Plaintiff in the chest and tackling Plaintiff to affect his arrest were objectively reasonable in light of the circumstances Officer Whitten confronted.

Officer Iames had informed Whitten that Plaintiff was intoxicated inside the residence and that earlier he had assaulted his wife and attacked his son.  Either Officer Iames or Plaintiff's son told Officer Whitten that Mrs. Fennimore had fled the scene, although it was unclear in which direction.  Edward also told Officer Whitten that Plaintiff kept shot guns in his attic.  This fact, in addition to reports at the scene that Plaintiff was an avid hunter, certainly gave rise to the serious concern that Plaintiff posed safety concerns.  Officer Whitten also believed that Mrs. Fennimore could still be in the residence; he reported hearing that she had been located elsewhere only after he had kicked in Plaintiff's front door.

17

The undisputed record further demonstrates that Officer Whitten resorted to force as a last resort, and only after repeated requests that Plaintiff exit the residence went unheeded.  The record further establishes that the degree of physical force employed by Officer Whitten was proportional to the need for force, especially given Plaintiff's active resistance to arrest.

As for any excessive force claim against Officer Iames, the record fails to establish that Iames employed <u>any</u> force against Plaintiff.  Officer Iames was not even present when Plaintiff was arrested.  And, as noted, Plaintiff pled no facts supporting excessive force claims against Officers Szemcsak and Kennedy. Regardless, the record clearly demonstrates that the force employed by these Officers was objectively reasonable in light of the circumstances they confronted.  To the extent Officer Szemcsak employed physical force against Plaintiff, he did so only after witnessing Plaintiff push Officer Whitten.  And the record demonstrates that Officer Kennedy only handcuffed Plaintiff; he did not otherwise physically engage Plaintiff during the arrest.

The Court concludes, and the undisputed record demonstrates, that the force exercised by the Defendant Officers was objectively reasonable and that the Officers' conduct did not violate Plaintiff's constitutional rights.  Thus, Defendants are entitled to qualified immunity and to summary judgment.

18

### b.  False Arrest

"It is well-established that the Fourth Amendment 'prohibits a police officer from arresting a citizen except upon probable cause.'" Reedy, 615 F.3d at 211 (quoting Orsatti, 71 F.3d at 482).  For a warrantless arrest, probable cause exists when, "at the time of the arrest, the facts and circumstances within the officer's knowledge are 'sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'" United States v. Glasser, 750 F.2d 1197, 1205 (3d Cir. 1984) (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964)). "Probable cause need only exist as to [one of the] offense[s] that could be charged under the circumstances." Id. (quoting Barna v. City of Perth Amboy, 42 F.3d 809, 819 (3d Cir. 1994)). When considering whether probable cause existed to support an arrest, courts look to the totality-of-the-circumstances. Id. (quoting Illinois v. Gates, 462 U.S. 213, 230 (1983)).

Here, upon arriving at the scene, the Officers observed Plaintiff's son Edward in physical distress.  Officer Whitten also observed a metal pole lying on the ground nearby and that Edward's shirt was ripped.  Although it appears that Edward denied that Plaintiff hit him in a recorded statement to police, the facts and circumstances at the time of the arrest would have led a prudent person to believe that Plaintiff had hit Edward.

19

The Court recognizes that "the question of probable cause in a section 1983 damage suit is an issue for the jury," <u>Montgomery v. De Simone</u>, 159 F.3d 120, 124 (3d Cir. 1998), but here there is simply no evidence by which a reasonable jury could conclude that the Defendant Officers lacked probable cause for Plaintiff's arrest.  Nor does Plaintiff's bare allegation that on the date and time in question he was "lawfully in his home, and had not committed that day any crime...." find any support in the record. Compl. ¶ 14.  Rather, the undisputed facts available to the Defendant Officers at the time of Plaintiff's arrest provided a reasonable basis by which to believe that Plaintiff had assaulted his son.  <u>See</u> <u>Glasser</u>, 750 F.2d at 1206.  Therefore, the Defendant Officers are entitled to summary judgment on this issue.

Moreover, as Defendants point out, given that the Defendant Officers had probable cause to believe that Plaintiff had assaulted his son, such Officers possessed a well-founded belief that domestic violence had occurred.[7]  <u>See</u> N.J.S.A. § 2C:25-19(a).  Thus, New Jersey law mandated Plaintiff's arrest.  <u>See</u> N.J.S.A. § 2C:25-21(a).  Nothing in the record contradicts

---

[7]A "[v]ictim of domestic violence" . . . shall include any person who is 18 years of age or older . . . and who has been subjected to domestic violence by . . . any other person who is a present or former household member." N.J.S.A. § 2C:25-19(d). Edward was nineteen at the time of the incident.  <u>See</u> Def. Ex. B.

20

Officer Whitten's testimony that Edward reported being struck by
Plaintiff at the scene, even though Edward denied being struck in
a later statement to the police.  Defendants are entitled to
summary judgment on this issue.

### c.   Malicious Prosecution

A constitutional claim for malicious prosecution in the
Third Circuit requires a plaintiff to establish five elements:

> (1) the defendants initiated a criminal proceeding; (2) the
> criminal proceeding ended in plaintiff's favor; (3) the
> proceeding was initiated without probable cause; (4) the
> defendants acted maliciously or for a purpose other than
> bringing the plaintiff to justice; and (5) the plaintiff
> suffered deprivation of liberty consistent with the concept
> of seizure as a consequence of a legal proceeding."

Kossler v. Crisanti, 564 F.3d 181, 186 (3d Cir. 2009) (citing

Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003)).

Plaintiff was charged with two counts of aggravated assault
with a deadly weapon and with obstructing a domestic violence
investigation.  These charges were later dismissed.  But the only
deprivation of liberty alleged by Plaintiff was the fact that he
was handcuffed upon his arrest.  See Compl. ¶ 25 ("The Plaintiff
was handcuffed and deprived of his liberty.").  The undisputed
record fails to demonstrate an essential element of Plaintiff's
constitutional claim:  "some deprivation of liberty consistent
with the concept of 'seizure.'"  Gallo, 161 F.3d at 222 (quoting

Singer v. Fulton County Sheriff, 63 F.3d 110, 116 (2d Cir. 1995)).

Plaintiff does not allege or otherwise establish that any restrictions were placed on his liberty after the arrest.  See Wiltz v. Middlesex County Office of Prosecutor, 249 Fed.Appx. 944, 949 (3d Cir. 2007)(affirming dismissal of § 1983 claim where plaintiff alleged an arrest but did "not allege that she was incarcerated, required to post bond, maintain contact with Pretrial Services, refrain from traveling, or that she endured any other 'post-indictment' deprivation of liberty as a result of the legal proceedings.").  And any argument that Plaintiff's liberty was restricted because he was required to appear in municipal court must be rejected.  "Attending one's trial is not a government 'seizure' in a 42 U.S.C. § 1983 malicious prosecution action for violation of the Fourth Amendment." DiBella v. Borough of Beachwood, 407 F.3d 599, 603 (3d Cir. 2005).  Defendants are entitled to summary judgment on this issue as well.

### 2.  Count Two

In Count Two of his Complaint, Plaintiff attempts to state a claim against Lower Township for supervisory liability. Defendants urge the Court to grant summary judgment because Plaintiff fails to identify any policy or custom which caused him

constitutional injury and otherwise fails to support any claim for lack of training or failure to supervise.

"Under 42 U.S.C. § 1983, municipal defendants cannot be held liable under a theory of respondeat superior; municipal liability only arises when a constitutional deprivation results from an official custom or policy." Montgomery v. De Simone, 159 F.3d 120, 126 (3d Cir. 1998) (citing Monell v. Department of Social Servs. of City of N.Y., 436 U.S. 658, 691-94 (1978)). "'Policy' includes official proclamations made by a municipal decisionmaker with final authority, and 'custom' is defined as 'practices of state officials...so permanent and well settled as to virtually constitute law.'" Kelly v. Borough of Carlisle, 622 F.3d 248, 263 (3d Cir. 2010) (quoting Berg v. County of Allegheny, 219 F.3d 261, 275 (3d Cir. 2000)) (internal quotation marks and citation omitted).

To the extent Plaintiff seeks to hold Lower Township directly responsible for the actions of the Defendant Officers, such claim is clearly barred by Monell. See Montgomery, 159 F.3d at 127. To the extent Plaintiff seeks to hold the Township liable due to a pattern or practice that led to the violation of Plaintiff's rights, the Court agrees that Plaintiff fails to identify the offending custom or practice. See McTernan v. City of York, PA, 564 F.3d 636, 658 (3d Cir. 2009) ("To satisfy the

pleading standard, [a plaintiff] must identify a custom or policy, and specify what exactly that custom or policy was.").

Nor does Plaintiff establish a factual predicate for knowledge or acquiescence to any wrongful conduct by Lower Township.  The Third Circuit has "held that a failure to train, discipline or control can only form the basis for section 1983 municipal liability if the plaintiff can show both contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents and circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate." Montgomery, 159 F.3d at 127 (citing Bonenberger v. Plymouth Twp., 132 F.3d 20, 25 (3d Cir. 1997)).  Plaintiff fails even to plead, let alone establish, any facts suggesting that the Township or a Township supervisor had contemporaneous knowledge of Plaintiff's arrest, detention or prosecution.  Nor has Plaintiff pled any facts that suggest a pattern of similar incidents such that a Lower Township supervisor's actions or inaction could be interpreted as encouraging the violation of Plaintiff's rights.

**B.   State Law Claims**

In Count Three of his Complaint, Plaintiff purports to state claims for malicious or wrongful use of process, abuse of process, assault, battery, false imprisonment, intentional and

negligent infliction of emotional distress.  Defendants argue
that Plaintiff failed to comply with the New Jersey Tort Claims
Act notice requirements, specifically N.J.S.A. § 59:8-4 and
N.J.S.A. § 59:8-8.

The Tort Claims Act bars actions against public entities or
public employees unless plaintiffs comply with the notice
provisions of the Act.  N.J.S.A. 59:8-3 ("No action shall be
brought against a public entity or public employee under this act
unless the claim upon which it is based shall have been presented
in accordance with the procedure set forth in this chapter."
(footnote omitted)).  Before filing a complaint, plaintiffs must
submit a notice of their claims within ninety days of the claim's
accrual.  N.J.S.A. 59:8-8(a).  Such Notice must contain:

> a. The name and post office address of the claimant;
>
> b. The post-office address to which the person presenting
> the claim desires notices to be sent;
>
> c. The date, place and other circumstances of the occurrence
> or transaction which gave rise to the claim asserted;
>
> d. A general description of the injury, damage or loss
> incurred so far as it may be known at the time of
> presentation of the claim;
>
> e. The name or names of the public entity, employee or
> employees causing the injury, damage or loss, if known; and
>
> f. The amount claimed as of the date of presentation of the
> claim, including the estimated amount of any prospective
> injury, damage, or loss, insofar as it may be known at the
> time of the presentation of the claim, together with the
> basis of computation of the amount claimed.

N.J.S.A. 59:8-4.

These notice requirements "allow the public entity
sufficient time to settle claims prior to the commencement of
suit; give the public entity prompt notification so that it may
investigate the facts while they are still fresh; afford the
public entity the chance to correct the conditions which gave
rise to the claim; and inform the public entity in advance of any
liability it may incur."  Bayer v. Township of Union, 414
N.J.Super. 238, 257-58 (App. Div. 2010)(quoting Beauchamp v.
Amedio, 164 N.J. 111, 121-22 (2000)).

Plaintiff alleges in his Complaint that "[n]otice of the
pendent or ancillary state tort claims was provided to the
Defendants, and the Notice was made timely under state law."
Compl. ¶ 52.  However, the record fails to demonstrate that
Plaintiff took any steps to comply with the Tort Claims Act
notice requirements.  Plaintiff produced what was essentially a
litigation hold letter in response to Defendants' request for any
and all tort claims notices.  The purported "claim notice" simply
instructed the Lower Township Prosecutor that Plaintiff had
retained a firm "to investigate possible civil rights violations"
and referenced the criminal matter State v. William Fennimore.
Def. Ex. M.  The letter further directed:  "notice is hereby

given that all evidence...be preserved in anticipation of litigation." Id.

Plaintiff's letter failed to provide the Township with <u>any</u> notice of Plaintiff's claims for assault, battery, false imprisonment, intentional or negligent infliction of emotional distress.  The letter, dated November 14, 2007, was also filed well-after Plaintiff's claims for assault, battery, false imprisonment, intentional or negligent infliction of emotional distress accrued, <u>i.e.</u>, June 15, 2007.  See <u>Bayer</u>, 414 N.J.Super. at 258 ("In the case of tortious conduct, the date of accrual is the date of the incident on which the tortious conduct took place.").  Where a claim is not filed within ninety days of accrual, a court must determine whether the plaintiff alleged extraordinary circumstances justifying the delay and whether the public entity or employee will be substantially prejudiced by the delay." <u>Bayer</u>, 414 N.J.Super. at 258.  Plaintiff has not alleged, and the record does not suggest, any such circumstances here.

Arguably, Plaintiff's letter provided <u>some</u> notice of a malicious or wrongful use of process or abuse of process claim, given that the letter refers to civil rights violations and the criminal matter involving Plaintiff.  The record is also unclear as to when the charges against Plaintiff were dismissed.  The

date pled in the Complaint was September 18, 2007, which would make a November 14 notice of claim timely under the Act.   The Court also recognizes that "substantial rather than strict compliance with the notice requirements of the Act may satisfactorily meet the statute's mandates," but Plaintiff has raised no "substantial compliance" argument here.   Lebron, 407 N.J.Super. at 215-16.   And given its lack of specificity, this Court cannot conclude that Plaintiff's letter "substantially satisfie[d] the purposes for which notices of claims are required."   Id. at 216.   The letter stated that the firm retained by Plaintiff was investigating "possible civil rights violations" with regard to the criminal matter involving Plaintiff.   The letter provided no definitive indication that Plaintiff intended to sue for malicious prosecution or abuse of process.   Nor did the letter give the Township any information about the prosecution, the names of public employees said to be involved or the amount of damages claimed.   The Court simply cannot find that the November 14 letter satisfied the Tort Claims Act notice provisions.   Thus, Plaintiff's state claims must be dismissed.

28

**IV.   CONCLUSION**

For the aforementioned reasons, the Court grants Defendants'
unopposed motion for summary judgment.[8]  An appropriate Order
will issue this date.


Dated: <u>May 4, 2011</u>                    <u>s/Renée Marie Bumb</u>
                                       RENÉE MARIE BUMB
                                       UNITED STATES DISTRICT JUDGE

---

[8]Given the Court's award of summary judgment in Defendants'
favor as to all claims, the Court need not address Defendants'
punitive damages argument.